GARY M. RESTAINO
United States Attorney
District of Arizona

JOSEPH F. BOZDECH
California State Bar Number 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: joseph.bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>FNH USA, LLC M249S Rifle CAL:556, Serial Number M249SA05938,<br><br>    Defendant *in Rem*. | Case No.<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

  Plaintiff United States of America brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**BASIS FOR FORFEITURE**

  1. This is a civil action *in rem*, brought to enforce the provisions of 18 U.S.C. § 924(d) for the forfeiture of a firearm involved in a violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A).

**JURISDICTION AND VENUE**

  2. This Court has subject matter jurisdiction because the United States commenced this action and because this is an action for forfeiture. 28 U.S.C. §§ 1345, 1355(a).

3. The Court has *in rem* jurisdiction because acts or omissions giving rise to the forfeiture occurred in the District of Arizona, and because venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1395. 28 U.S.C. § 1355(b).

4. Venue is proper in this District because acts or omissions giving rise to forfeiture occurred in this District, and because the property is located in this District. 28 U.S.C. §§ 1355(b), 1395(a), (b).

## DEFENDANT IN REM

5. The Defendant *in Rem* consists of a FNH USA, LLC M249S Rifle CAL:556, Serial Number M249SA05938 (the "FNH Rifle").

6. The FNH Rifle was both seized and is currently in custody in Phoenix, Arizona.

## BACKGROUND

7. On April 6, 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agents ("SA") received information regarding the prepaid purchase of a FN M249S rifle.

8. ATF SA Christian R. Villarruel learned an individual identified as Jesus Antonio Castro ("Castro") entered Federal Firearms Licensee ("FFL") Ammo AZ and attempted to purchase a FNH USA, LLC M249S Rifle CAL:556, Serial Number M249SA05938.

9. According to the transaction detail, Castro paid a total of $13,575.00 in U.S. currency for the firearm.

10. SA Villarruel knows through training and experience that individuals who are often involved in firearms trafficking purchase firearms with cash so as not to create credit card transactions records, and to conceal the recipient of the firearm's identity.

11. SA Villarruel also knows through training and experience that guns like the FNH Rifle are highly sought after firearms by members of the Mexican Drug Trafficking Organizations ("MDTO") as they can be readily converted to belt-fed machine guns for use against the Mexican military, Mexican law enforcement, and rival MDTOs.

2

12. SA Villarruel was notified prior to Castro paying for the firearm.

13. Castro was overheard by Ammo AZ employees communicating on his cell phone with an unknown third party.

14. Castro was overheard asking the unknown third party if they were okay with the color of the firearm.

15. After he prepaid for the firearm, FFL Ammo AZ told Castro he could pick up the firearm later.

16. Prior to the transfer of a firearm from an FFL, the buyer must complete ATF Form 4473 (Firearms Transaction Record). The FFL is required to keep a copy of the ATF Form 4473 in its records.

17. ATF Form 4473 requires the purchaser to provide information regarding his/her identity, and answer, among others, the following questions: (a) whether he/she is the actual transferee/buyer of the firearms (the form notifies the transferee/buyer that he/she is not the actual transferee/buyer if he/she is acquiring the firearm on behalf of another person); and (b) whether he/she has ever been convicted in any court of a felony or any other crime for which the judge could have imprisoned him/her for more than one year, even if he/she received a shorter sentence including probation.

18. ATF Form 4473 also requires the buyer to certify, among other things, (a) that his/her answers are true, correct and complete; (b) that he/she understands that making false statements on the form is a crime; and (c) that he/she understands that if he/she answers in the affirmative to certain questions, including the question about having been convicted of a felony stated in paragraph 14(a) above, that he/she is prohibited from receiving or possessing a firearm.

19. Castro completed an ATF Form 4473 for his purchase of the FNH Rifle from FFL Ammo AZ.

20. On the ATF Form 4473, Castro identified his current state of residence and address as 6206 W Encinas Ln, Phoenix, AZ 85043.

21. Castro answered "yes" to question 21a on the form and signed his name certifying his ATF Form 4473 in block 22, as shown below.

> 21. Answer the following questions by checking or marking either the "yes" or "no" box to the right of the questions:    Yes   No
> a. Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?
> Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you. Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b.    [X]   [ ]
>
> I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.m. is prohibited from receiving or possessing a firearm. I understand that a person who answers "yes" to question 21.n.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 21.n.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale to predominantly earn a profit without a Federal firearms license is a violation of Federal law.
>
> 22. Transferee's/Buyer's Signature [signature]    23. Certification Date   Month 4   Day 6   Year 2023

**ATTEMPTED INTERVIEW WITH JESUS ANTONIO CASTRO**

22. On April 12, 20223, ATF Special Agents traveled to 6206 W Encinas Ln, Phoenix, Arizona 85043 to attempt to speak with Castro regarding his purchase of the FNH Rifle.

23. 6206 W Encinas Ln, Phoenix, AZ 85043 is the address Castro gave as his current residence on question 10 of ATF Form 4473, as shown below.

> 10. Current State of Residence and Address (U.S. postal abbreviations are acceptable. Cannot be a post office box.)
> Number and Street Address: 6206 W ENCINAS LN   City: PHOENIX   Reside in City Limits? [X] Yes [ ] No [ ] Unknown   State: AZ   ZIP Code: 85043   County/Parish/Borough: MARICOPA

24. Upon arriving at the residence, SA Villarruel knocked on the front door and was greeted by Yolanda Castro ("Yolanda").

25. SA Villarruel presented his ATF credentials to Yolanda and identified himself.

26. SA Villarruel stated that he was looking to speak with Castro.

27. Yolanda replied that Castro was her son.

28. SA Villarruel told Yolanda the SAs needed to speak with Castro regarding a firearm Castro recently attempted to purchase.

4

29. SA Villarruel asked if Castro lived at the residence, and Yolanda stated Castro did not.

30. SA Villarruel asked if Yolanda knew where Castro currently lived.

31. Yolanda responded Castro lived with his girlfriend, but she did not know where.

32. Yolanda said that Castro had not lived at the residence for approximately three years.

33. SA Villarruel showed Yolanda a photograph of Castro.

34. Yolanda confirmed the individual in the photograph was her son, Castro.

35. SA Villarruel stated it was important that the SAs speak with Castro as soon as possible. SA Sander asked if Castro had a job, and Yolanda answered yes.

36. SA Villarruel provided Yolanda his phone number so she could have Castro give SA Villarruel a call.

37. SAs thanked Yolanda for her help and departed the residence.

### SEIZURE OF THE BARRETT

38. On April 12, 2023, SAs Villarruel and Sander took possession of the FNH Rifle at FFL Ammo AZ.

### CASTRO'S WAGE HISTORY

39. SA Villarruel reviewed the reported wages for Castro. According to the Arizona Department of Economic Security ("DES"), Castro's last reported wages were from the first quarter of 2022, when he earned $0.07 from Stitch Fix, Inc.

40. Castro earned only $6,305.57 for the entire fourth quarter of 2021 from Stitch Fix, Inc.

41. DES reflected no other reported wage history for Castro.

### SPECIAL AGENTS' CONTACT WITH JESUS ANTONIO CASTRO

42. On April 12, 2023, SA Villarruel contacted Castro by telephone.

43. SA Villarruel explained he was a Special Agent with ATF.

5

44. SA Villarruel stated he needed to speak with Castro in person regarding a firearm Castro recently attempted to purchase.

45. Castro stated he would be working but invited the SAs to meet him at his auto mechanic shop.

46. Castro later provided SA Villarruel his work address, 4501 S 7th Ave, Phoenix, Arizona 85041.

47. Upon arriving to the identified address and meeting with Castro, the SAs presented Castro with their ATF credentials.

48. SA Villarruel explained ATF mainly dealt with firearms.

49. SA Villarruel stated they needed to speak with Castro about a firearm he purchased within the last year.

50. Castro said he had purchased two Glock pistols.

51. Castro stated he purchased firearms from gun shows and pawn shops.

52. SA Villarruel asked if Castro purchased firearms via private sale, and Castro stated sometimes he did.

53. Castro said he attempted to purchase the FNH Rifle.

54. SA Villarruel asked if Castro knew the caliber of the firearm, and Castro replied he thought the caliber was .223/.556.

55. SA Villarruel asked why Castro wanted to purchase the firearm. Castro responded he had gone shooting with his friend and he liked the firearm.

56. SA Sander asked if Castro ever sold firearms, and Castro stated yes.

57. Castro affirmed that he was still in possession of the two Glock pistols he had purchased.

58. Castro stated he previously sold Smith & Wesson Bodyguard pistols to "some people."

59. SAs asked how Castro met the people he sold the firearms to. Castro stated the people were his friends or associates.

60. SA Villarruel asked if Castro required any information when he sold firearms, and Castro said he would complete a bill of sale.

61. SA Villarruel asked if Castro was still in possession of the bills of sale. Castro stated he did not think so.

62. SA Sander asked how long Castro had his auto mechanic shop for, and Castro responded two years.

63. SA Villarruel asked how much Castro paid for the FNH Rifle, and Castro replied $13,000.

64. Castro stated he used cash to pay for the firearm.

### Castro's Income

65. SA Villarruel stated according to the Arizona Department of Economic Security (DES), Castro was last employed at Stitch Fix Inc.

66. SA Villarruel stated Castro's last reported wages showed he earned minimal wages.

67. SA Villarruel stated that it appeared Castro had not earned any wages in 2022.

68. SA Sander asked Castro how much he earned working at his auto mechanic shop. Castro said his income varied, but he estimated earning $4,000 a month.

69. Castro stated he paid rent for his auto mechanic shop and paid rent where he lived, and also had monthly expenses related to his two children.

70. SA Sander asked if somebody gave Castro the money to purchase the FNH Rifle, which Castro denied.

71. SA Villarruel informed Castro the SAs seized the firearm, and Castro stated that was fine.

72. Castro denied being recruited to purchase the firearm for anybody else.

73. Castro denied purchasing the firearm for anybody else.

74. SA Villarruel stated Castro had broken federal law by using a false address on the ATF Form 4473.

7

75. SA Villarruel stated the information Castro used on the ATF Form 4473 needed to be current.

76. SA Villarruel stated Castro put an address on ATF Form 4473 at which he had not resided for three years.

77. SA Villarruel showed Castro the ATF Form 4473 he completed, and Castro recalled reading through the form. Castro apologized to the SAs.

78. SA Villarruel provided Castro with ATF Form 3400.23 (Receipt for Property and Other Items) and ATF Form 3400.1 (Consent to Forfeiture or Destruction of Property and Waiver of Notice).

79. After explaining the forms to Castro, Castro signed ATF Form 3400.23 but stated he did not want to sign ATF Form 3400.1.

80. SA Villarruel asked Castro his current address so a notice could be sent to him.

81. Castro provided his current address as 3517 S 77th Ave, Phoenix, Arizona 85043.

82. SA Villarruel repeated Castro needed to use his current address when he purchased a firearm, and Castro acknowledged.

83. SAs thanked Castro for his time and departed the location.

84. On April 28, 2023, ATF commenced administrative forfeiture.

85. On May 31, 2023, Castro filed a claim to the subject property with ATF.

## CLAIM FOR RELIEF

86. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 85 as those fully set forth herein.

87. The defendant *in rem* is subject to forfeiture pursuant to 18 U.S.C. § 924(d) as it is a firearm involved in a violation of providing materially false information to a Federal Firearms Licensee in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A).

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United Sates of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and property, together with the costs and disbursements of this action.

DATED this 24th day of August 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/S/ Joseph F. Bozdech*
JOSEPH F. BOZDECH
Assistant United States Attorney